# In the United States Court of Federal Claims

No. 10-594L
(Filed: August 19, 2013)
*NOT FOR PUBLICATION*

|  |  |
|---|---|
| BISHOP, et al., | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

**OPINION APPROVING SETTLEMENT AGREEMENT AND CONTINGENCY FEE AGREEMENT**

This matter comes before the court on the parties' joint motion for approval of the settlement agreement between the United States ("the government") and the plaintiffs in this opt-in class action Rails-to-Trails case, arising from the creation of a recreational trail along a 10.6-mile long former railroad corridor running across plaintiffs' land between the towns of Augusta, Kansas and Andover, Kansas. Plaintiffs alleged that the government "took" their property interests without just compensation when it authorized the conversion of the rail corridor to a recreational trail.

In exchange for a resolution of all claims in this case, this settlement agreement will provide the plaintiffs and class members with the appraised fair market value of their property interests and pre-judgment interest on their claims. Class counsel will receive as part of the settlement attorneys' fees and costs as authorized by the "fee-shifting"

provision of the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"), 42 U.S.C. § 4654(c) (2012).[1] Class counsel will also receive attorneys' fees based on class counsel's contingency fee agreement with the plaintiffs and class members. Any contingency fee received will offset plaintiffs' statutory fees. The parties now ask the court to approve this settlement. Class counsel separately asks the court to approve the contingency fee arrangement.

The court gave preliminary approval of the settlement agreement on June 18, 2013, and a fairness hearing was conducted on July 26, 2013. An authorized representative of the Attorney General approved the settlement agreement on August 16, 2013. For the reasons discussed below, the settlement of the class action is **APPROVED**, and class counsel's contingency fee arrangement is also **APPROVED**.

---

[1] Generally, in the United States, each party to a lawsuit bears its own attorneys' fees and costs, regardless of the outcome of the proceedings. See Bywaters v. United States, 670 F.3d 1221, 1226-27 (Fed. Cir. 2012). For certain types of cases, however, Congress has enacted statutes that "shift" some of the burden of paying attorneys' fees and costs from a plaintiff to a defendant. Id. The "fee-shifting" provision of the URA is one example. The URA states in relevant part:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c).

## I.   BACKGROUND

### A.   Terms of Settlement Agreement

The present action was filed in 2010, and beginning in 2011, the parties entered into an appraisal and settlement process for resolving the claims in this case. The proposed settlement thus ends three years of litigation regarding the plaintiffs' Fifth Amendment takings claims against the government for authorizing the conversion of a former rail corridor across plaintiffs' properties into a recreational trail under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d). The proposed settlement agreement resolves the claims of all of the 68 named plaintiffs and class members.

As part of the proposed settlement, the government has agreed to pay the plaintiffs and class members the fair market value of the property which they alleged had been taken, based on the parties' agreed-upon appraisal of the properties. The fair market value of the plaintiffs' and class members' combined property interests amounts to $1,028,735. The United States has also agreed to pay the pre-judgment interest on this amount for an additional $558,497, which has been calculated from September 14, 2004 (the date of the taking) through September 30, 2013 (the estimated date of payment of settlement). Thus, the total amount of just compensation under the proposed settlement is $1,587,232.

The United States has further agreed to pay plaintiffs $270,000 in attorneys' fees and costs as part of the settlement. As noted above, these fees and costs are authorized under the "fee-shifting" provision of the URA. 28 U.S.C. § 4654(c).

Class counsel also seeks to have this court approve class counsel's contingency fee agreement. The fee agreement provides for a contingency fee of 33% of the total settlement award, defined to include principal and interest. Given the total amount of the principal and interest of the settlement of $1,587,232, the contingency fee amounts to $523,786.56. The statutory fee of $270,000 will be applied to the contingency fee, meaning that the class will be responsible for payment of attorneys' fees of $253,786.56 in addition to the statutory fee award. This fee responsibility is to be divided among the plaintiffs and class members on a pro rata basis, based on each plaintiff's or class member's percentage of the total just compensation.

### B. Notice of Settlement to Class Members, Objections to the Settlement, and the Fairness Hearing

On June 18, 2013, the court gave preliminary approval of the proposed settlement agreement, approved the parties' joint proposed plan for providing notice to the class members of the proposed settlement, and scheduled a fairness hearing for July 26, 2013. The notice to the class members solicited written comments from the class members regarding the proposed settlement agreement and also provided that there would be an opportunity for any plaintiff or class member to speak at the hearing. Of the 68 named plaintiffs and class members in this case, 66 indicated that they approved of the settlement agreement. One plaintiff and one class member indicated that they did not approve of the proposed settlement. The objecting plaintiff indicated on his comment form that he did not "like the idea of people walking in [his] backyard." Pls.' Notice, Ex. A, ECF No. 94. The objecting class member, Stelbar Oil Corporation, Inc. ("Stelbar

Oil"), indicated that it objected to the proposed settlement on the grounds that the appraised value for its parcels was too low. Id.

The court conducted a telephonic fairness hearing on July 26, 2013. Several of the plaintiffs and class members that supported the settlement agreement attended the fairness hearing. Mr. John Shawver, on behalf of objecting class member Stelbar Oil, spoke at the hearing. Mr. Shawver objected to the settlement on the grounds that Stelbar Oil's parcels were inaccurately appraised as agricultural land, and instead should have been appraised to take into account the impending residential development that he believed raised the value of Stelbar Oil's parcels above the value that was being offered under the settlement agreement.

The court now turns to the parties' joint motion for approval of the proposed settlement agreement and class counsel's request for approval of the contingency fee agreement.

## II.   DISCUSSION

### A.   The Settlement Agreement.

Under Rule 23(e) of the Rules of the United States Court of Federal Claims, the court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Id.; see also Moore v. United States, 63 Fed. Cl. 781, 783 (2005). The court has the discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement, nor may it decide the merits of the case or resolve unsettled legal questions. Adams v. United States, 107 Fed. Cl. 74, 75-76 (2012) (citing

Evans v. Jeff D., 475 U.S. 717, 726-27 (1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

There is no definitive list of factors that the court must apply in considering a class action settlement. Raulerson v. United States, 108 Fed. Cl. 675, 677 (2013). However, in determining whether a settlement agreement is "fair, reasonable, and adequate," courts have found the following factors instructive: (1) the relative strengths of plaintiffs' case compared to the proposed settlement; (2) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class; (3) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the provision for attorney fees; and (6) the ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity. Sabo v. United States, 102 Fed. Cl. 619, 627 (2011) (citing Barnes v. United States, No. 04-1335C, 2010 WL 1904503, at *2 (Fed. Cl. May 7, 2010)); see also Moore, 63 Fed. Cl. at 784 (listing nine similar factors and citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)).

Turning first to the just compensation agreed to under the settlement, the court finds that this amount is fair, reasonable, and adequate as to each class member individually and to the class as a whole. Under the terms of the settlement, the government agrees to pay the plaintiffs and class members a total of $1,587,232 in just compensation, the appraised fair market value of the plaintiffs' and class members'

Case 1:10-cv-00594-NBF   Document 102   Filed 08/19/13   Page 7 of 10

property interests in this case as well as pre-judgment interest. These figures are the culmination of years of arms-length negotiation and appraisal. The parties retained a professionally-certified joint appraiser. Neither party was bound by the joint appraiser's assessment of the plaintiffs' and the class members' parcels, and both parties' counsel independently reviewed and approved the joint appraisal.

The joint appraiser categorized the plaintiffs' and class members' properties based on land use. Appraisals for representative parcels from each land use category were conducted. Based on this process, the parties reached an agreement on the per square foot or per square acre land values for each land use category, and applied these values to the remaining parcels within each category. In addition, several parcels were classified as unique and individually appraised. Objecting class member Stelbar Oil's property was individually appraised. After conducting his individual appraisal of Stelbar Oil's property, the joint appraiser determined that, at the time of the taking, Stelbar Oil's property was zoned as agricultural, and that its highest and best use was still agricultural, and valued the property accordingly.

Despite the objections of Stelbar Oil, the court finds that this appraisal process, conducted by a certified joint appraiser, and approved by both parties, applied a common methodology across all of the plaintiffs' and class members' properties, and adequately took into account the uniqueness of certain properties, including Stelbar Oil's property, at the time of the taking. Each class member will receive the fair market value of his or her individual property interest based on this common appraisal process. The agreement does not single out or reward one class member over another. As such, this process was

both fair to the individual class members and the class as a whole. Finally, only two of the 68 class members in this case objected to the settlement agreement, a small fraction of the class as a whole.[2]

The court further finds that the statutory attorneys' fees and costs agreed to under the settlement are reasonable. As noted above, the URA provides that for Fifth Amendment cases such as this one, the government may reimburse plaintiffs for their "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred" during the litigation, as approved by the Attorney General. 42 U.S.C. § 4654(c). In evaluating such awards, the Attorney General's opinion is entitled to deference, and the court does not conduct the same in-depth analysis as it would if it were rendering the award. Moore, 63 Fed. at 785 n.6. In this case, attorneys' fees did not form the basis of any objection to the settlement agreement. In light of the deference owed to the Attorney General in these circumstances, the court finds that the attorneys' fees and costs provision in the settlement agreement is reasonable. For all of these reasons, the court holds that the parties' proposed settlement agreement is fair, reasonable, and adequate and warrants approval.

### B. Plaintiffs' Contingency Fee Arrangement.

RCFC 23(h) allows the Court to award "reasonable" attorneys' fees and costs. As with evaluating a proposed settlement, there is no definitive list of factors the court must

---

[2] The objecting plaintiff, Mr. Lane, did not speak at the fairness hearing. Mr. Lane objected to the settlement agreement on the grounds that he did not like the idea of trail users walking through his backyard. The court recognizes this objection as regarding the legal operation of the Trails Act in general, not the particular factors that the court must weigh in approving the settlement agreement in this case.

apply in determining whether attorneys' fees are "reasonable." Raulerson, 108 Fed. Cl. at 679. Among the factors courts have considered in determining whether attorneys' fees are "reasonable" are (1) the quality of counsel, (2) the complexity and duration of the litigation, (3) the risk of non-recovery, (4) the fee that likely would have been negotiated between private parties in similar cases, (5) any class members' objections to the settlement or fees requested, (6) the percentage applied in other class actions, and (7) the size of the award. Id. at 679-80 (citations omitted). The court has considerable discretion in awarding attorneys' fees and costs based on the factual context of the case before it. Id. at 680 (citing Moore, 63 Fed. Cl. at 786).

As discussed above, class counsel's fee agreement provides for a contingency fee of 33% of the total settlement award, defined as principal and interest, that amounts to $523,786.56. The statutory fee of $270,000 will be applied to the contingency fee, meaning that the class will be responsible for payment of attorneys' fees of $253,786.56 in addition to the statutory fee award. This fee responsibility is to be divided among the class on a pro rata basis, based on each plaintiff's or class member's percentage of the total just compensation.

After consideration of the above-listed factors and the contingency fee agreement, the court finds that class counsel's fee arrangement is reasonable. The majority of the factors that courts consider in determining whether fee arrangements are reasonable favor class counsel's requested fees. As noted above, this litigation has lasted three years and has involved 68 class members with complex valuation issues, negotiated by experienced counsel. The court does not have an adequate record to determine the risk of non-

recovery; however, "all litigation carries risk," and during the fairness hearing class counsel indicated that it has endeavored to weigh that risk in determining whether settlement was appropriate. Raulerson, 108 Fed. Cl. at 680. None of the class members or named plaintiffs objected to either the statutory fees or the contingency fees requested by class counsel. In addition, the court recently approved a similar contingency fee arrangement for a Rails-to-Trails case in Kansas where class counsel, as here, offset the contingency fee by the URA statutory fee award. Voth Oil Company v. United States, 108 Fed. Cl. 98, 105 (2012). In that case, this court found that a 40% contingency fee agreement, offset by the statutory fee award, fell within court-approved ranges for similar fee agreements in Kansas. Id. at 106. The 33% contingency fee here also falls within this acceptable range. Id.; see also Raulerson, 108 Fed. Cl. at 680. The court therefore approves class counsel's contingency fee arrangement in this case.

### III. CONCLUSION

For the foregoing reasons, the parties' proposed settlement agreement, including the attorneys' fees and costs agreed to as authorized by the URA, is **APPROVED.** Plaintiffs' contingency fee agreement is also **APPROVED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge